Case 1:25-cv-00258   Document 24   Filed 02/20/26 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
February 20, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS ALEJANDRO ARANDA GOMEZ, | § § | |
| Petitioner, | § § | |
| VS. | § § | CIVIL ACTION NO. 1:25-CV-258 |
| PAMELA JO BONDI, *et al.,* | § § § | |
| Respondents. | § § | |

# **ORDER**

Petitioner Jesus Alejandro Aranda Gomez is a national of Mexico currently detained by United States immigration authorities at the Ell Valle Detention Facility in Willacy County, Texas. In 2014, an immigration judge ordered Petitioner removed to Mexico, but granted withholding of removal based on the Convention Against Torture. The United States released him pending further proceedings.

Eleven years later, in 2025, the United States detained Petitioner, informing him that he would be removed to a country other than Mexico. Petitioner then initiated this habeas action and moved for a temporary restraining order requiring his immediate release or an individualized bond hearing, and challenging Respondents' procedures for removal to a third country–i.e., a country other than Mexico. To maintain the status quo while considering the parties' arguments, the Court has issued two Temporary Restraining Orders (Docs. 22, 23).

The United States filed its response to Petitioner's request for injunctive relief, and moves for dismissal for lack of subject matter jurisdiction. (Mot. to Dismiss, Doc. 15)

For the following reasons, the Court concludes that it possesses jurisdiction to adjudicate Petitioner's claims, and that he is entitled to some of the relief that he requests.

I.     **Facts and Procedural History**

Petitioner is a citizen of Mexico who entered the United States many years ago. In 2000, he was arrested on theft charges and placed on probation. When he applied for a visa in 2003, he failed to disclose the arrest to a consular officer.

In 2009, Petitioner was removed to Mexico, where he and his family suffered violence and harassment by armed individuals who Petitioner believes formed part of the Gulf Cartel. The following year, based on the advice of an individual, Petitioner presented himself at the Hidalgo, Texas port of entry and requested asylum. At that time, the Department of Homeland Security's database reflected Petitioner's criminal history and his 2003 failure to disclose it.

The United States initiated removal proceedings and released Petitioner on bond. In 2014, an Immigration Judge ordered Petitioner removed to Mexico, but simultaneously granted him withholding of removal to that country under the Convention Against Torture ("the CAT").[1] (Munoz Decl., Doc. 20, 2; Order of Removal, Doc. 16, 4) Petitioner was not detained following this determination and he remained in the United States.

More than a decade later, on November 5, 2025, immigration officials detained Petitioner during a traffic stop. They currently hold him in custody at the El Valle Detention Center in Willacy County, Texas.

Respondents designated Petitioner for removal to a third country under 8 U.S.C. § 1231(b)(2) and 8 C.F.R. § 241.15 and began seeking a third country that would receive him. To date, El Salvador and Honduras have declined requests to accept him.

On November 7, Petitioner filed this habeas action, requesting his immediate release or an individualized custody determination, and challenging Respondents' third-country removal procedures. (Pet., Doc. 1) On November 18, the Court issued an Order (Doc. 6) requiring

---

[1] Under the relevant regulations, this finding meant that the Immigration Judge determined that removing Petitioner to Mexico would subject him to "an extreme form of cruel and inhumane punishment" that would cause "severe pain or suffering." 8 C.F.R. § 208.18(a). Protection under the CAT is country specific and does not foreclose removal to third countries. 8 C.F.R. § 1208.16(f).

2 / 18

Respondents to provide written notice to Petitioner and his counsel informing them of "any country to which they intend to deport or remove him" and prohibiting his removal for five business days following such notice.

On December 24, Petitioner filed the operative Second Amended Petition (Doc. 13) and Motion for Temporary Restraining Order (Doc. 14), in which he re-alleges his challenges to his detention and the third-country removal procedures. Respondents have moved to dismiss Petitioner's claims, arguing that he is lawfully detained based on a final order of removal and that Respondents' third-country removal procedures adhere to statutory and constitutional requirements. (Mot. to Dismiss, Doc. 15)

**II.    Analysis**

    **A.  Relevant Removal Procedures**

        **1.  The Statutory Framework**

A district court considering a similar challenge to the one that Petitioner presents has accurately summarized the normal removal process for aliens:

> When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where he may be removed. In the first instance, the alien is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the alien does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).
>
> Meanwhile, the alien is also entitled to seek various protections, including asylum, withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured. *See* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681–822

>(1998) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16–18, 1208.16–18; 28 C.F.R. § 200.1; *see also* Moncrieffe, 569 U.S. at 187 n.1).

*D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 365–66 (D. Mass. 2025).

Once the United States secures a final Order of Removal as to an individual, 8 U.S.C. § 1231 governs the removal itself. Section 1231(a) requires the detention of the individual and prescribes a time period during which removal must occur, subject to various exceptions.[2] Section 1231(b) concerns "countries to which aliens may be removed[.]" This subsection describes different scenarios and the countries to which the United States may remove an alien under those varying circumstances. Although an Order of Removal typically authorizes removal of the alien to a specific country, Section 1231(b) unambiguously contemplates removal to various countries, depending upon the circumstances. In other words, Section 1231(b) does not expressly restrict removal to the specific country identified in the Order of Removal.

Section 1231(b)(3)(A) precludes removal of an alien to any country that is subject to a specific finding by the Secretary:

>Notwithstanding paragraphs (1) and (2), the [Secretary of Homeland Security ("the Secretary")] may not remove an alien to a country if the [Secretary] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.[3]

In addition, Congress has directed appropriate federal agencies to "prescribe regulations to implement the obligations of the United States under Article 3 of the [CAT.]" Pub. L. 105-277, § 2242 (1998) (codified as 8 U.S.C. § 1231). Under those obligations, the United States generally may not remove an individual to a country where the alien is more likely than not to suffer torture or persecution.[4] *See* 8 U.S.C. § 1231(b)(3)(a); 8 C.F.R. § 1208.16.

---

[2] For example, release is available on humanitarian grounds, 8 U.S.C. § 1182(d)(5)(A), or under an order of supervision or parole. 8 C.F.R. § 241.4

[3] The Homeland Security Act of 2002 transferred the primary responsibility for enforcing immigration laws from the Attorney General to the Secretary of Homeland Security. *See* Pub. L. No. 107-296, 116 Stat. 2135 §§ 441–46 (2002).

[4] Protections under 8 U.S.C. § 1231(b)(3)(A) require an alien to show that it is more likely than not that he or she would be persecuted on account of a protected ground. To win relief under the CAT, the alien must prove that it is more likely than not that he or she would be subject to torture by the consent or acquiescence of a public official, but no nexus to a protected ground is required. 8 C.F.R. §§ 1208.16(c)(3), 1208.18(a).

The current habeas action concerns the obligations that Section 1231(b)(3)(A) and 8 C.F.R. § 1208.16 impose upon the United States as to an alien who the United States seeks to remove to a third country, and whether the Due Process Clause of the Fifth Amendment requires any additional protections.

### 2. 2025 Guidance

In March 2025, the Secretary issued guidance outlining third-country removal procedures. (March Guidance, Doc. 16–2) A class action immediately arose challenging those procedures. *See D.V.D.*, 778 F. Supp. 3d at 355. The district court in *D.V.D.* certified a class representing individuals subject to a final order of removal and newly designated for third-country removal. The court granted a preliminary injunction prohibiting the removal of a class member to "any country not explicitly provided for on the alien's order of removal" unless first providing the alien with: written notice; the meaningful opportunity to request protection under the CAT regarding that country; the ability to request the reopening of immigration proceedings upon an affirmative reasonable fear determination; and at least 15 days for the alien to seek the reopening of immigration proceedings upon a negative reasonable fear determination. *Id.* at 392–93. On June 13, 2025, the Supreme Court granted a stay of the preliminary injunction pending the United States's appeal to the First Circuit. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

On July 9, the Secretary renewed the third-country removal guidance. (July Guidance, Doc. 16–1; collectively, the March Guidance and July Guidance are referred to as the "2025 Guidance") The 2025 Guidance establishes two tracks. First, if the "United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." (July Guidance, Doc.

16–1, 1–2) Under the literal construction of this language, Respondents may remove an alien to the third country with no notice or other procedural protections.

In the absence of the referenced diplomatic assurances, the 2025 Guidance establishes a notice procedure. First, the Enforcement and Removal Operations ("ERO") agency within ICE will serve the alien with a Notice of Removal that identifies the intended country of removal. ERO will ensure that the Notice of Removal is read to the alien "in a language he or she understands." (*Id.* at 2) ERO "will generally wait at least 24 hours following service of the Notice of Removal[,]" although removal may occur within six hours "as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal." (*Id.*) In either situation, ERO "will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.* (emphasis in original)) Absent any indication by the alien of fear of removal to the indicated country, ERO will proceed with the removal.

If the alien "<u>affirmatively state[s]</u> a fear if removed" to the indicated country, then ERO "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility protection under section 241(b)(3) of the INA and [the CAT]." (Id.) USCIS will generally conduct the screening within 24 hours, determining "whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." (*Id.*) "If USCIS determines that the alien has not met this standard, the alien will be removed." (*Id.*) If USCIS determines that the alien satisfies the applicable standard, USCIS "will refer the matter to immigration court for further proceedings." (*Id.*)

### B. Jurisdiction

As a threshold argument, Respondents argue that the Court lacks jurisdiction to review Petitioner's habeas action, on the grounds that 8 U.S.C. § 1252 bars the claims as "inextricably intertwined with ICE's authority to execute a final order of removal[.]" (Mot. to Dismiss, Doc. 15,

5–6) In response, Petitioner contends that he does not ask the Court "to review or invalidate a removal order[.]" (Resp., Doc. 18, 2)

"It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. 1981). Federal courts generally have jurisdiction over cases arising under federal law and habeas petitions. *See* 28 U.S.C. § 1331; 28 U.S.C. § 2241. Congress, however, has limited that jurisdiction in immigration-related matters. In particular, 8 U.S.C. § 1252(b)(9) bars district courts from reviewing challenges to matters "arising from any action taken or proceeding brought to remove an alien from the United States." *See also* 8 U.S.C. § 1252(a)(5) (designating courts of appeals as the proper forum for such challenges). This prohibition generally applies to "any action directly or indirectly attacking a final order of deportation, exclusion, or removal." *Duarte v. Mayorkas*, 27 F.4th 1044, 1052 (5th Cir. 2022). While the Supreme Court has declined to provide a "comprehensive interpretation" of Section 1252(b)(9), it has cautioned against interpreting the statute broadly, limiting its application to challenges of removal orders, corresponding detention, "or the process by which . . . removability will be determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

In the current matter, Petitioner does not challenge Respondents' ability to remove him to a third country. Rather, he alleges that Respondents lack "the legal authority to detain him at all in the absence of an executable removal order." (Resp., Doc. 18, 6) And he alleges that before removing him to a third country, Respondents must engage in "new designation procedures[,]" including that "DHS obtain[ ] affirmative written acceptance and provides notice and an opportunity to contest removal" to that country. (*Id.* at 5) Neither argument challenges the validity of the Order of Removal. In essence, Petitioner claims that the 2025 Guidance does not comply with statutory and regulatory procedural requirements or with protections that the Constitution mandates. He does not challenge "the process by which his removability will be

determined" or the validity of the removal order itself, but merely requests the opportunity to assert withholding of removal claims, under the CAT or otherwise, to any specified third country. Under these circumstances, the Court concludes that Section 1252 presents no bar to the Court exercising habeas jurisdiction in this matter.[5]

### C. Preliminary Injunction

To obtain a preliminary injunction, a party must demonstrate (1) a likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of equities favors the movant; and (4) that the injunction is in the public interest. *See Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the United States is the opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The party seeking a preliminary injunction bears the burden on each prerequisite. *Enter. Int'l, Inc. v. Corporación Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

Petitioner requests that the Court order his "immediate release from detention" and order that before Respondents remove him to a third country, Respondents must notify him of the specific third country to which he will be removed, allow him to indicate whether he fears removal to that specified country, and otherwise comply "with the INA and Due Process Clause." (Mot., Doc. 14, 4)

#### 1. Likelihood of Success on the Merits

##### a. Detention

The Court first considers whether Petitioner has demonstrated a substantial likelihood of success on the merits of his claim that Respondents lack the authority to detain him while they

---

[5] Although the Fifth Circuit has not addressed this issue, other courts have reached a similar conclusion. *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025); *Y.T.D. v. Andrews*, No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025). Respondents rely on district court cases agreeing with their position, but the Court respectfully disagrees with the conclusions in those decisions. (*See* Mot. to Dismiss, Doc. 15, 5–6 (citing *Diaz Turcios v. Oddo*, No. 3:25-CV-0083, 2025 WL 1904384 (W.D. Pa. July 10, 2025) and *C.R.L. v. Dickerson, et al.*, 4:25-CV-175-DL-AGH, 2025 WL 1800209 (M.D. Ga. June 30, 2025)))

8 / 18

seek a third country that will receive him. Based on the record and the applicable law, the Court concludes that Petitioner fails to make such a showing, precluding a preliminary injunction as to this form of requested relief.

Petitioner does not contest that an Immigration Judge issued an Order of Removal to Mexico, but then granted withholding of removal to that country. The granting of withholding of removal had no impact on the validity of the Order of Removal. *See, e.g.*, *Riley v. Bondi*, 145 S. Ct. 2190, 2198 (2025) (explaining that "a CAT order 'does not disturb' or 'affect the validity' of a final order of removal" (quoting *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020)). As a result, a final Order of Removal remains in place as to Petitioner.

The existence of an Order of Removal proves dispositive as to Petitioner's request for his immediate release. Under 8 U.S.C. § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" The statute permits the extension of the 90-day period under various circumstances. "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A).

Section 1231(c) authorizes the Secretary to "stay the removal of an alien" when, *inter alia*, "immediate removal is not practicable or proper[.]" During a stay of removal, the Secretary "may release" the alien under "conditions the Secretary may prescribe." 8 U.S.C. § 1231(c)(2)(C).

These statutory provisions delegate to the Secretary broad authority as to the detention of an alien who has been ordered removed. Construed literally, Section 1231(a) would permit indefinite detention for aliens subject to a final order of removal. Recognizing the constitutional concerns that indefinite detention would present, the Supreme Court has concluded that the "Constitution's demands [ ] limits an alien's post-removal-period detention [under Section 1231(a)] to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Under that jurisprudence, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*

at 701. The Supreme Court recognized six months as a "presumptively reasonable period of detention[.]" *Id.* at 680. After this period, if the alien can "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[,]" the "Government must respond with evidence sufficient to rebut that showing[,]" in order to render the ongoing detention constitutionally permissible. *Id.* at 701. Ultimately, the Supreme Court reaffirmed that under Section 1231(a), "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In the present case, Petitioner was released on bond during the pendency of the removal proceedings that culminated in an Order of Removal. After an Immigration Judge granted withholding of removal to Mexico, the Secretary exercised its discretion under Section 1231(c)(2)(C) not to detain Petitioner. In 2025, the Secretary desired to move forward with Petitioner's removal to a third country, and to facilitate such a removal, detained him. Petitioner presents no authority indicating that the Secretary's previous decision allowing Petitioner to remain at liberty in the country had to continue indefinitely, or that the Secretary had to comply with certain procedures to revoke the conditions of Petitioner's release. Generally, the discretion not to detain under Section 1231(c)(2)(C) necessarily implies the discretion to alter the conditions of the release, or to terminate release altogether.

*Zadvydas* establishes the limitations for Petitioner's detention under the Due Process Clause of the Fifth Amendment. But Petitioner has not demonstrated that no significant likelihood of removal in the reasonably foreseeable future exists. As it stands, Respondents have detained Petitioner for about four months, well within the six-month period that the Supreme Court deemed "presumptively reasonable."

Petitioner argues that Respondents cannot repeatedly restart the relevant removal period under *Zadvydas* by releasing an alien for a short duration, followed by the alien's re-detention.

The Court recognizes that such a practice could run afoul of the principles in *Zadvydas*. But those circumstances do not exist here. Respondents permitted Petitioner to remain in the United States for eleven years under the Secretary's discretion under Section 1231(c)(2)(C), and then detained him recently to move forward with his removal to a third country. Respondents present evidence demonstrating efforts to secure the acceptance of Petitioner by a third country. (*See* Request for Acceptance of Alien, Doc. 16, 5–7) Those efforts may or may not prove successful in the foreseeable future. But as it stands, the record reflects no attempt by Respondents to circumvent the limitations that *Zadvydas* established.

For these reasons, the Court concludes that Petitioner has failed to demonstrate a substantial likelihood of success on the merits of his request that the Court order his immediate release. This conclusion defeats his request for a preliminary injunction as to this relief.

### b. Removal to a Third Country

Petitioner also requests that the Court require Respondents to comply with certain procedural safeguards before removing him to a third country. Those protections include: (1) notice of the country to which Respondents intend to remove Petitioner; (2) an opportunity for Petitioner to raise a fear of removal to the specified country, with a reasonable fear interview by USCIS should Petitioner raise such a fear; and (3) the opportunity to seek review by an Immigration Judge of a negative reasonable fear determination. Petitioner argues that statutory and regulatory provisions require such relief, and that these protections are also required by the Due Process Clause of the Fifth Amendment.

With respect to statutory and regulatory requirements, the Court concludes that Petitioner has not shown a substantial likelihood of demonstrating entitlement to the requested relief. Section 1231(b) authorizes Respondents to remove an alien to a third country under certain circumstances. Notably, that statutory provision imposes no express obligation on the Secretary to notify an alien of the country to which the alien will be removed. Rather, the statute creates

certain limitations, most notably in Section 1231(b)(3)(A), which prohibits the Secretary from removing an alien to any country, "if the [Secretary] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Similarly, the CAT prohibits removal of an individual to a country where he is "more likely than not to be tortured in the country of removal." 8 C.F.R. 1208.16(c)(4).

The 2025 Guidance satisfies these statutory requirements. Each of the two avenues that the 2025 Guidance establishes for removal of an alien to a third country provides for the protection of an alien from the threat of life or liberty in that country. Under the first avenue, the Secretary determines that the country of removal has provided credible diplomatic assurances that aliens removed to that country will not be tortured or persecuted. Petitioner provides no statutory or jurisprudential authority indicating that the Secretary cannot rely on such diplomatic assurances to protect against a violation of Section 1231(b)(3)(A) and the CAT. And Respondents correctly note that a federal district court may not second guess the Executive Branch's determinations regarding the adequacy and credibility of diplomatic assurances that another country extends regarding the protections of aliens removed to that country. *See Munaf v. Geren*, 553 U.S. 674, 702–03 (2008) (deferring to the Executive Branch's determination and decision to transfer United States citizens alleged to have committed crimes in a foreign country to that country).

The second avenue under the 2025 Guidance provides more robust safeguards.[6] Under this process, ERO notifies an alien of the third country to which the alien will be removed, and will not effectuate removal for 24 hours, or six hours if the alien has the opportunity to consult with an attorney. If the alien expresses a fear of removal to that third country, ERO will refer the alien to USCIS for a reasonable fear determination. Removal to the third country will occur only

---

[6] It is the Court's understanding that Respondents in this case intend to proceed under this tract–i.e., providing notice to the Petitioner of the country that has agreed to accept him.

12 / 18

upon a negative determination. These steps permit an alien to express fear of removal to a specified country, and create a procedure for the Secretary to decide whether the alien's life or freedom will be threatened in that country due to the alien falling within one or more of the protected categories.

Petitioner contends that Respondents must permit him to seek review by an Immigration Judge of a negative reasonable fear determination. But he cites no statute or regulation requiring such review in connection with third-country removals. Rather, Petitioner asks the Court to apply to the third-country removal process the procedures that Respondents utilize during normal removal proceedings. Absent express statutory or regulatory provisions, however, the Court declines to read into the statute such a requirement. Section 1231(b)(3) prohibits the Secretary from removing an alien to a country in which the Secretary has decided that the alien's life or freedom will be threatened. Similarly, the CAT prohibits the Secretary from removing an alien to a country where he is "more likely than not to be tortured in the country of removal." 8 C.F.R. 1208.16(c)(4). But neither the statute nor regulations specify the procedure that the Secretary must follow to avoid violating these prohibitions. The Court declines to craft and impose procedures that the statutes and regulations do not dictate.

A separate question is whether the Due Process Clause of the Fifth Amendment requires additional safeguards beyond those that the statutes impose. The Due Process Clause applies to all persons within the United States, regardless of legal status. *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty'" interests "within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Under *Matthews*, courts assess constitutional requirements by evaluating (1) the private interest at stake; (2) a cost-benefit analysis of the erroneous deprivation of that interest; and (3) the government's interest associated with providing any procedural protections. *Id*. at 335. At times, this analysis has led courts to impose procedural

protections that statutes did not expressly require. *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 532–33 (2004) (requiring notice and a fair opportunity for a detainee classified as an enemy combatant to challenge that classification); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (requiring an evidentiary hearing before termination of public benefits). In the present matter, the Court applies the *Matthews* test to determine whether the Due Process Clause requires procedural protections beyond those within the 2025 Guidance.[7]

In the present case, Petitioner asserts that absent the procedural protections that he requests, Respondents may remove him to a country where he would face a likelihood of torture or persecution. Under the first *Mathews* prong, the preservation of bodily integrity represents a protected liberty interest. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (en banc).

As for the second prong, Petitioner contends that without protections beyond those within the 2025 Guidance, the risk of erroneous deprivation of his liberty interest is substantial. Typically, a USCIS negative reasonable fear determination affords no explanation supporting the denial. The lack of transparency increases the possibility of an erroneous negative reasonable fear determination. Requiring that Petitioner have the opportunity to seek review by an Immigration Judge of such a determination protects against the possibility of an erroneous denial, and presents a minimal burden to Respondents.

The record contains no information regarding the probability that Respondents may remove an alien such as Petitioner to a country where the alien's life or freedom would be threatened. For example, the Court has no data reflecting the percentage of negative reasonable fear determinations by USCIS officials that Immigration Judges overturn. Petitioner's position

---

[7] The parties here did not brief the *Matthews* test. But other courts considering similar third-country-removal cases have applied *Matthews*, and their analysis proves instructive and includes consideration of the issues presented by many litigants raising challenges substantively-identical to Petitioners, both before this Court and in other district courts. *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992 (S.D. Tex. 2025); *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *6 (W.D. Wash. Nov. 17, 2025) (collecting cases).

rests on the possibility that such removal could occur, absent additional procedural protections. While the Court agrees that the possibility exists of an erroneous removal, it also finds that the record does not reflect that such an outcome would be likely or probable. As a result, while the second factor weighs in favor of some procedural protections, it does so only moderately. The factor weighs most heavily in favor of additional procedural protections as to any removal without notice to the alien of the third country. For example, the 2025 Guidance, construed literally, permits removal without notice or other procedural safeguards if the Secretary determines that a third country has presented credible diplomatic assurances that aliens removed to that country will not face torture or persecution. While such a determination may satisfy statutory requirements, the general nature of the diplomatic assurances renders it less likely that such assurances will encompass all of the concerns that a specific individual may hold. In other words, an alien may possess unique concerns for removal to a specific third country, and absent notice of removal to that country, would be unable to express such fears.

As to the final *Matthews* prong, the Court recognizes that the Executive Branch has a strong interest in enforcing the nation's immigration laws as it deems appropriate and effectuating removal orders expeditiously. Still, modest procedural protections do not question the Executive Branch's enforcement of immigration laws and impose no significant burden on its efforts in this area.

Based on the *Matthews* factors, the Court concludes that as to third country removals, the Due Process Clause requires Respondents to notify an alien of the specific third country to which the alien will be removed. As a result, to the extent that the 2025 Guidance would permit Respondents to remove an alien to a third country with no notice, such a procedure would run afoul of the Due Process Clause of the Fifth Amendment. In other words, Respondents must notify an alien of the specific country to which the alien will be removed, even when the Secretary has

determined that the third country receiving the alien has provided credible diplomatic assurances that it will not torture or harm aliens removed to that country.

As for the adequacy of the notice, the Court finds guidance in the Supreme Court's decision in *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025). That decision concerned the adequacy of notice of removal under the Alien Enemies Act. In that context, the Supreme Court explained that under the Due Process Clause, any "notice and the opportunity to be heard [must be] appropriate to the nature of the case." *Id.* (cleaned up). For example, the Supreme Court indicated that "notice must be afforded within a reasonable time and in such a manner as will allow [the alien] to actually seek habeas relief in the proper venue before such removal occurs." *Id.*

The same principles prove relevant as to the notice for third-country removal. Respondents must provide an alien with notice of the country of removal with sufficient time for the alien to express fear of removal to that country and to seek relief through appropriate avenues. Although no bright-line rule exists as to the length of such notice, the Court finds that seven days' notice will suffice to meet these ends in most cases.

In all other respects, the 2025 Guidance complies with statutory and constitutional obligations. For example, the Court concludes that Petitioner has not demonstrated that the relevant statutes require that an alien who receives a negative reasonable fear determination from a USCIS official must be afforded the ability to seek review of that decision by an Immigration Judge.

### 2. Substantial Threat of Irreparable Harm

Under this prong of the preliminary-injunction analysis, the applicant must demonstrate that absent a preliminary injunction, irreparable harm will occur before a decision on the merits can be rendered. *Winter*, 555 U.S. at 22.

In the present matter, Petitioner contends that absent notice of the country of removal and the ability to express fear of removal to that country, the Petitioner is faced with the substantial

threat to bodily integrity upon removal. In turn, Respondents argue that such harm is speculative, and that in any event, the 2025 Guidance guards against this possibility.

The analysis under this prong is similar to the analysis of Petitioner's liberty interest under the *Matthews* test. The irreparable harm that Petitioner asserts is his constitutionally protected right to bodily integrity. Absent the ability of Petitioner to protect this right with proper notice and the meaningful opportunity to express fear and seek other relief to which the Petitioner is entitled, Petitioner faces a substantial threat of harm to his protected interests. As a result, this factor weighs in favor of Petitioner, as to the relief that the Court grants.

### 3. Balance of Equities and the Public Interest

The third and fourth preliminary injunction factors merge when the government is the opposing party. *Nken*, 556 U.S. at 435. The Supreme Court has recognized a "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Id*. at 436. At the same time, the public interest is furthered by the prompt enforcement of the nation's laws. While both positions have merit, requiring notice to Petitioner does not materially hinder Respondents' ability to enforce the nation's immigration laws. Accordingly, this factor is neutral.

Petitioner has satisfied the factors for the issuance of a preliminary injunction to the extent indicated in this Order and Opinion. In all other respects, the Court finds that Respondents' 2025 Guidance complies with statutory and regulatory requirements, and that it does not violate the Due Process Clause of the Fifth Amendment.

### III. Conclusion

For these reasons, it is:

**ORDERED** that Respondents' Motion to Dismiss (Doc. 15) is **DENIED**;

**ORDERED** that Petitioner Jesus Alejandro Aranda Gomez's Emergency Motion for Immediate Release, or in the Alternative, Temporary Restraining Order (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that Respondents shall comply with the notice provisions of the 2025 Guidance as to Petitioner, irrespective of whether the Secretary has determined that the country of removal has provided credible diplomatic assurances that aliens removed to that country will not be persecuted or tortured, and subject to the other requirements in this Order; and

**ORDERED** that Respondents may not remove Petitioner to the designated third country less than seven days after providing him with the notice of the country to which he will be removed.

Signed on February 20, 2026.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge